### THE TUGBOAT NO. 6.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

#### No. 222.

COLLISION (§ 102*)—STEAM VESSELS—BOTH VESSELS IN FAULT.

    A decree of the District Court affirmed, which held a tug proceeding with a carfloat on her side from Jersey City to East River chargeable with contributory fault for a collision with an outbound steamship from her pier in North River in the daytime, upon the evidence showing that her lookout was negligent in not seeing and reporting the steamer in time, and that she continued to swing toward the steamer from a nearly parallel course without an exchange of signals.

    [Ed. Note.—For other cases, see Collision, Dec. Dig. § 102.*]

Appeal from the District Court of the United States for the Southern District of New York.

The decree (148 Fed. 1007) held both vessels in fault for a collision between the steamer Nord America and the tug Transfer No. 6, which occurred in the harbor of New York at 1:45 p. m. November 23, 1904. The tug alone appeals.

William Greenough (Wm. S. Montgomery, of counsel), for appellant.

Wallace, Butler & Brown (Frederick M. Brown, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. We have examined the record with care, and are not satisfied that the District Judge was in error in holding both vessels in fault for what he correctly terms a "very careless collision." Occurring as it did in broad daylight, with nothing in the elements to prevent safe navigation, it might almost be asserted that the presumption is that it required the carelessness of both vessels to produce a result so indefensible. If the tug had seen the steamer before she was almost in the jaws of collision, and had taken ordinary precautions thereafter, we are convinced that the accident might have been avoided. It is, however, enough to say that the District Judge, who heard all the witnesses for the tug, found against her upon the facts as follows:

First. Her lookout was negligent in not seeing and reporting the steamer in time.

Second. The tug was not on a crossing course, but continued to swing towards the steamer without an exchange of signals.

Under the well-known rule of this court that, in such circumstances, the findings of the District Court should not be disturbed, we think the decree should be affirmed, with interest and costs.

NOTE.—The following is the opinion of Adams, District Judge, in the court below:

ADAMS, District Judge. The libellant, La Veloce Navigazioni Italiana a Vapore, was the owner of the steamship Nord America, which was in collision about 1:45 o'clock P. M. on the 23d of November, 1904, with a carfloat, 250 feet long, in tow on the port side of the New York, New Haven & Hartford tug No. 6. The sterns of the tug and float were about even and the float projected about 160 feet ahead of the tug. The steamer was bound from her pier. at the foot of 34th Street, North River, to sea. The tug and float were bound from a pier below the Communipaw Ferry Jersey City, to the Harlem River through the East River. The collision occurred in the channel 200 or 300 feet south and east of the white buoy marking the northeasterly corner of the anchorage ground in that vicinity, the eastern side of which is defined by a line running south-southwest from said white buoy. The collision occurred, a little to the southward of the buoy and a few hundred feet to the eastward of the said line, by the port corner of the float striking the starboard side of the steamtug forward of the stern. Both vessels were moving ahead at the time and the consequence of the blow was damage to the steamer, said to amount to $26,000.

The steamer alleges that the collision was occasioned by the fault of the tug (1) in having no proper lookout, (2) in proceeding across the anchorage grounds and coming out of the same without giving any signal, (3) in starboarding her wheel without giving any signal thereof, (4) in not continuing under a starboard wheel so as to pass under the stern of the steamer, (5) in maintaining undue speed and in not avoiding the collision by stopping and backing.

The tug alleges that the collision was caused by the steamer (1) in that having the tug and float on her starboard hand she failed to keep out of the way, (2) that she failed to stop and back in time, (3) that she failed to observe the tow in time to comply with her obligation under the starboard hand rule, (4) that she did not have a proper lookout and (5) that she failed to sound any warning signal of her approach or intended movements.

The testimony shows that the steamer left her pier under the charge of a Sandy Hook pilot and proceeded down the river. Her movements were adapted to the contingencies of navigation, which gradually brought her to the starboard side of the channel opposite the anchorage grounds. About the time it became necessary to observe the tug and float on her starboard side, the atten-

tion of those on her were absorbed by the movements of a schooner just ahead, which was apparently being towed to an anchorage across the steamer's bow. The steamer reduced her speed to allow such a manœuvre on the schooner's part and failed to see the approach of the tug and float until shortly before the collision. The pilot did not see them until the steamer was on a line with the white buoy. The pilot said that they were then not taking a course across the river to the East River but were on a course of S.SE., exposing the whole port side of the float broad on the steamer's bow, about 5 points, and might have been bound down to the Baltimore & Ohio Railroad Company's yards on Staten Island, or to some place in that vicinity. When, almost immediately thereafter, he saw they were swinging to the port and creating danger of collision, he rung up full speed on the engines, with a view of escaping in that way but it was too late and the collision occurred. The steamer had a lookout but he was apparently too much engaged in observing the movements of the schooner to see the approach of the tug and float.

The tug made fast to the float heading in towards New Jersey, backed out and allowed the sterns to swing down the river. They then went ahead turning eastward, but did not pursue a straight course for the East River. They turned to the southward so much that at one time they were on a course nearly parallel with that of the steamer. They sagged down the river and reached a point to the southward of the white buoy and were going over the anchorage ground. By this time the tow was getting headed more around and then the steamer was first seen by the pilot, 800 to 1,000 feet away, bearing 4 or 5 points on the tug's port bow. The tug continued to turn and shortly afterwards the collision took place. A floatman on the float was requested by the master of the tug to keep a lookout and he did so, but inefficiently. He said in one place that he first saw the steamer when she was about two float lengths away; that up to that time his view was obstructed by the ferry boat Bound Brook, which came out from her slip, above the pier where the tug started from, bound across the river. In another place he said that he knew the steamer was coming because he had seen her when they were backing out, before the ferryboat partially obstructed his view. It is not claimed that a report of the steamer was made at any time. As the tug was intending to cross the channel, it was incumbent upon her to notice vessels going either way and for her lookout to report them. Such a precaution would probably have avoided this very careless collision.

The steamer candidly admits that she was in fault and only asks for half damages. The tug urges that there was no fault on her part under the starboard hand rule and Inspectors' Navigation Rule 2, the steamer was bound to avoid her and give the necessary signals.

The starboard hand rule does not apply to this case, though the tug and float were on the starboard hand of the steamer, because the tug had no definite course. The failure of the steamer to see and signal the tow was undoubtedly a fault on her part without regard to the rule, but the fact that the tow swung so far down as to be navigating over the anchorage ground and her uncertain course give a somewhat different aspect to the matter from that which would prevail if both vessels were in ordinarily navigable waters, where others vessels would naturally be encountered, and the starboard hand rule was observed by one of them. It seems that the tug was in fault for failing to see, or receive a report of the steamer, until a collision was imminent. The tug's continued swing toward the steamer's course in the absence of the exchange of signals was clearly contributory to the collision. It was a case where both vessels were negligent with respect to lookout duty and signals, and both should be condemned.

Decree for the libellant for half damages, with an order of reference.